13-1133 N. RE. MOTOROLA MOBILITY. Is it Mr. McKeown? McKeown. How do you say your name? McKeown. Okay. You may proceed. I'd like to reserve five minutes for rebuttal. Good afternoon, Your Honors. May it please the Court. Scott McKeown on behalf of Appellant 13-1133 N. RE. MOTOROLA MOBILITY. The issue in this appeal is remarkably similar to that presented recently in N. RE. SUTCO's surface. Namely, this appeal also turns on a simple question of claim construction. Namely, does the PTO have unfettered discretion to ignore limitations of a claim just because that claim is written in an open-ended format? Claim four recites an optimized reply comprising elements A and B. And what we've argued consistently throughout this reexamination for years is that optimized reply is a term of degree. And the proper way to interpret that term of degree is to look to the specification for guidance. And that's exactly what we did. And we explained to the examiner and the board what that guidance provided. And we additionally went and got evidence from someone skilled in the art, and that declaration is of record, explaining exactly what that optimized reply is. And what that optimized reply is, is a reply that is sent in place of the reply that otherwise would have been sent absent the system or absent the optimization. The typical application where you can sort of envision what's happening here is an email exchange. You're inviting someone to lunch. Are you available? Yes, I'm available. Where should we go? I don't know. So there's this back and forth, and this email string grows. And so what the invention does is... We understand how the invention works, but isn't your problem that you didn't define optimized reply to be the shorter of the two? You actually just defined optimized reply as the delta between them. Well, that was the PTO's argument, which is, well, optimized reply says comprising elements A and B. So therefore, if we can find something in the prior art that has elements A and B, that's an optimized reply. And what we've argued specifically relative to the Morgan reference is that's not what Morgan is doing. Morgan doesn't do any optimization at all. It's receiving deltas from users. This is a shareware or groupware environment. So if you're working on a document, everybody's providing edits, and then you build a new document, and you send it out. And what the PTO has said is, well, that document has an ID associated with it, and that delta, that new edit that's provided by a user, that's all your claim requires. And what we've said is, well, how is that optimized? What is the server doing to optimize... I mean, I understand that, but your specification specifically says the optimized reply is the shorter of the two between the original and the second, and that that's what optimization really is. But that's not what your specification says. Well, I would respectfully disagree. I think that that is what the specification is saying. If you look at, and I think the solicitor replies upon this very passage in the patent as well, when you're in the process of forming an optimized reply, sometimes it turns out that it's not optimized at all. So in that case, you send the normal reply. But the claims require sending an optimized reply. So we're not claiming the system that chooses between the options. We're claiming the system that sends that optimized reply. Well, wait a minute. But you seem now to be saying that the specification defines optimized as the shorter. But the problem is, in the reference language that the PTO points out, which is the most difficult thing for you to deal with, and you really have to deal with it head on with us today, is thus, for example, a normal reply message to a very short message may be selected for transmission, where the overhead of the delta and the message identifier make the optimized reply bigger. It doesn't say make it no longer cease to be optimized. They still refer to that, even though it would be bigger, as definitively the optimized reply, even though it would, in fact, be bigger than the reply alone. So that's your problem. Your problem is a definitional one. Well, in that context, though, it's talking about what the server is doing. So the server in the context of the claim is forming an optimized reply. And then if it turns out that that formation is not optimized, it's not sent as the optimized reply. That's not what that passage says. I mean, I thought that that was a potentially good answer until I focused hard on the language may be selected. It doesn't say if what you call, it's a dual problem. It's the definitional one. But it doesn't even say if the one that contains the delta and the identifier is longer, do not send it. That was the interpretation from one of skill in the art that we've provided in the declaration that that was indeed the interpretation because that was the purpose of the system. If you do a computation and you determine that, well, this optimization that you want to do turns out not to be an optimization, then you wouldn't send it. I mean, that's the entire purpose of this system is to cut down on the volume that you're sending and the bandwidth. So from the perspective of one of skill in the art, that is what that passage is saying, is that the entire purpose of the system is to cut down on the traffic that's going back and forth. Well, I mean, it may have been the purpose, but the problem is that you've got some really sloppy language in the specification. And even in figure 9, you say compare optimized reply with the standard reply and send the shortest. You don't say, unless it's shortest, it's not really optimized. Well, again, going back to the declaration, we provided this declaration to the PTO. And what the PTO has said, they didn't say we don't agree with what that person of ordinary skill in the art is saying what is interpreted here. We're just saying we don't agree with it because we don't like the conclusion. So we provided evidence on the record that that is exactly what the patent is providing. And the PTO is just simply saying, well, we disagree with it. So we don't know why the PTO is disagreeing. Well, I thought the PTO's disagreement was quite clear. It's because the specification itself defines optimized reply. And because of the passage that I quoted to you and that both Judge Toronto and Judge O'Malley are mentioning, that optimized reply as used in this patent expressly does not require it to be smaller. Because it says so at column 12, line 5. It expressly says so. I mean, that's what I understand their response to be. And they also, in addition, point to the word comprising before delta and identifier. But their primary argument, as I understand it, is column 12. The primary argument as conveyed to me during the oral argument at the board was, well, if you look at figure 9, the reply equals delta plus message identifier. So therefore, we don't have to go any further. That was my understanding of the board's position. And that was what was conveyed to me so that they didn't have to reach all of this additional evidence that we provided. They thought it was a cut and dry issue. The Judge Gianetti pointed out, counsel, isn't your problem that this claim is open-ended and recites comprising. That was what the board decided in view of what we had submitted as to reducing the size of the message, which is borne out in this patent as the purpose. Again, to read it otherwise would be to read it on the exact problem that we were trying to fix. In other words, if you're not making anything more efficient or smaller, then you must be sending everything or you must be sending that whole email chain. So what we pointed out to the board was, well, if we're describing that as the problem, how can the claim be read to encompass that scope? Isn't that clearly disclaimed in the patent? And the response was, well, we're not really sure if we have to follow the case law and disclaimer if it's not in a context of broadest reasonable interpretation. Can I ask, is there anything in the specification that talks about other ways in which a reply can be optimized besides being smaller? I think the only... Because one can imagine such ways, you know, sending information that tells a small device display only a portion unless you want to display more. Right, and that's primarily the whole point of the invention is you have two indexes on opposite sides of this communication system and you're sending sort of shorthand notations and if the receiver wants to see the whole conversation, they can press a button to build the whole message based upon the index that they have stored locally. So the concept there is you have locally stored indexes which will have some of this back and forth. No, no, I understand that. Maybe I didn't ask the question well enough. Is anything but reducing the amount of bandwidth being used described in the specification as a way of optimizing or is that the only way? To my knowledge, the only thing in the patent is reducing in the amount of volume of data. Column 13, replies being sent to the client can similarly use an optimized reply to minimize messaging sizes. So there they're talking about, well, you could do it at one point or you can do it at both ends. So claim four is directed toward the sort of handheld unit or the user end. You can also do it at the server. So you have both sides just receiving deltas. And you agreed that in the prior art that the document identifier or whatever the other term is actually included? It wasn't obvious to me that it was. We have not disputed that. Certainly, Morgan shows a delta, new edits or whatever it is, a word processing document, new content. So, okay, there's a delta there and that document has an identifier. So we haven't disputed that. What we're saying is, well, you just can't stop there. The communication has to be optimized. You want to save the rest of your time for rebuttal? Yes. Mr. Foreman? Thank you. May it please the Court. Through this case, we've had some trouble getting Motorola to pin down exactly what they want the claim term optimized to mean. But I think in their reply brief, they said it in the clearest way. They say, the optimized reply does not require a precise limitation beyond the simple and straightforward requirement that the optimized reply consume less volume bandwidth than the reply that would otherwise be sent. And as you discussed with Motorola's counsel, this is clearly contradicted in the specification at that passage at column 12, where it expressly says that sometimes the optimized reply is going to be larger than a normal reply and thus consume more bandwidth. So I think the very limitation that Motorola wants to place on the claim is expressly contradicted in the specification. Well, their argument is, but that column, and I'm trying to open it up and find it, says, and in that circumstance, the normal reply would be sent, right? Yes, it does, right? Doesn't it? It does. Okay. So if the normal reply is smaller than the normal reply, and they, as I understood it, said, well, that's just a discussion of one possible embodiment, but that the claim, claim four itself, requires the sending of the optimized reply. Therefore, it expressly excludes this embodiment. And everywhere else in the patent, when they're talking about optimized reply, it's a shorter message. I mean, the words shorter message appear a number of times throughout. So what, how would you respond to that argument? I'd respond to that by saying that claim four does not include this comparison step. So there's, there's an embodiment described where before the message is sent, there's a comparison between the normal reply and optimized reply, and only the shortest is sent with the claim four, just as forming the optimized reply and sending the optimized reply. So in our view, whatever the optimized reply is, whether it's larger or smaller, is sent, because there's no comparison step. And it's clear if you look at figure nine in the 899 patent, that really the bottom half of figure nine, which is on page 823, is an embodiment of claim four. And there's no comparison step shown there, while the top half of figure nine, which is not part of claim four, does have the comparison step. So I don't think that claim four necessarily requires this comparison embodiment that's described in the specification. So you're saying that they would just create a reply that is the, that is the delta between the two, and then just send it, and that there's a claim in there that, that essentially doesn't have any advantage in terms of the technology. Well, the, the claim doesn't necessarily, doesn't preclude the comparison step, but I don't think the claim can be read to require the comparison step, since there's nothing in the claim language that even hints at that. But there, there are repeated places in the specification that they, that say that the point is to figure out which message is the optimum for transmission, and that that's the point of what it is they're trying to do here, because we're trying to save bandwidth. And so how do you respond to his argument that when claim four says, send the optimized reply, then by definition that means that that one has to be the shorter, or we wouldn't be sending it? Well, I, I think the, the claim language is, is very broad, and very vague, and that if they really wanted to say, we're only going to send the shorter one, they could have said that, but they didn't. They said, you know, an optimized reply comprising a delta, an identifier delta, and sending the optimized reply. So, I mean, we have to go on what claim language is stated, and I don't think that this claim language is, is specific enough to, you know, pull in all of these requirements from the specification, that there be a comparison, and that, you know, the, the optimized replies are necessarily, or the optimized reply that is sent is necessarily smaller, consumes less bandwidth. And the odd result here is that, that Morgan, which you say anticipates, actually, if it, does almost the opposite of what this saving of bandwidth is designed to do, right? I mean, it's not really, I mean, the, the, while, of course, there's the, the same concept of the language, the delta language, it's for a different purpose entirely, isn't it? Well, Morgan does form the delta and identifier, and for the specific purpose of saving bandwidth, but the, I agree that the, the transmission of those, just the delta and identifier go from the client, the mobile client in Morgan to the server. And then the server forms the fully annotated document and sends that on. But the, but as, as Motorola's counsel stated, they don't deny that, or challenge the fact that the fully annotated document that's sent from the server in Morgan contains both the delta and identifier. And just the issue in this case is whether it contains, it contains some other stuff too, and Motorola believes the claim shouldn't be read to, you know, include that other stuff. You know, my last point I just want to make is that, you know, the standard for, like I said before, the claims here are very broad. And to be able to read in all these limitations that, that Motorola wants from the specification, you know, there must be clear statements in the specification that, that give you the license to do that. And here, as, as we've discussed, claim, column 12 includes this very clear statement that the optimized reply can, in fact, be larger than a normal reply. And that, in and of itself, is enough to, to contradict Motorola's claim construction argument. Anything else? No. Thank you. Thank you. Mr. McKeown? Yes. Thank you. I just want to respond to respectfully disagree with some of the points the solicitor made on the language of claim four. Although I don't believe this issue was briefed, I think the determining step, and specifically determining a first data unit forming a portion of the reply data, gets at the comparison that he was hoping to distinguish. Again, what this appeal comes down to is what does optimized mean? And, and the board never really provided a construction in any way of optimized. They simply pointed to these two components that, in their opinion, was all that was required of the claim. We have evidence on record as to our interpretation of optimized. Again, we have no fact finding as to why that's not persuasive, as to why one's skilled in the art reading this passage that we've talked about today of sending the optimized reply or sending the normal reply, why that doesn't, under the broadest reasonable interpretation with a claim that recites sending an optimized reply, why it wouldn't exclude sending the normal reply in its place. It's just a common sense understanding of that. I'm not even sure we needed that additional declaration evidence, but we provided it anyway to the board. There has to be some meaning ascribed to optimized other than, well, because comprising follows it, we just have to find A and B, because that does great violence to the specification and really the entire point of this invention. What this court has found in In Re Sut Co is that word comprising does not give the USPTO a license to just come up with their own interpretation. They need to go back to that specification. This is a term of degree. They never disagreed with that anywhere except for the first time in the solicitor's brief. They never said it was indefinite like the solicitor pointed out in this brief. They just didn't say anything about it. So we don't have any fact finding on optimized other than we're just going to interpret it as including components A and B, and it's our submission that that is incorrect in view of Sutco surface, and we would ask that you reverse on that ground. Okay. Thanks, both counsel. The case will take another submission.